374 F.Supp. 15 (1974)
In the Matter of Rudolph William STUCKENBERG, Bankrupt.
No. 69 B 359.
United States District Court, E. D. Missouri, E. D.
March 21, 1974.
*16 James E. McDaniel, Barnard, Timm & McDaniel, St. Louis, Mo., for First Federal Savings & Loan Assn. of Normandy.
Curtis L. Mann, Clayton, Mo., for trustee Jerome W. Sidel.

MEMORANDUM OPINION AND ORDER
REGAN, District Judge.
Both the First Federal Savings and Loan Association of Normandy (First Federal) and the Trustee in Bankruptcy have separately petitioned for review of different portions of the order of the Referee in Bankruptcy sustaining in part and denying in part the Trustee's petition for a turnover order against First Federal.
At issue is the right of First Federal to retain certain real estate rentals collected by it after bankruptcy on property of which First Federal was mortgagee and bankrupt was mortgagor in default. Most of the determinative facts have been stipulated and are not in dispute. We will refer to these and other facts shown by the evidence in the course of this opinion.
At bankruptcy a parcel of real estate improved with a building was owned by bankrupt but held in the name of a straw party. The property was encumbered with a deed of trust securing a note payable to and held by First Federal on which the sum of $35,643.80 was due as of February 28, 1969, the date of the adjudication. The structure on the property is a ranchette-style apartment building containing five apartment units under one roof but separated from each other by party walls. Each unit is separately numbered and has direct access to the street, but there is a single basement for the common use of the tenants. At date of bankruptcy all five units were occupied by tenants.
Paragraph 7 of the deed of trust provids in part that in the event of default, First Federal (in addition to other remedies) "shall have power and authority to take possession of the said real estate and to manage, control and lease the same and collect all the rents, issues and profits therefrom [for the purpose of paying the note secured by the deed of trust] * * *." Monthly payments were required by the note.
Bankrupt defaulted in making the payments due for January and February, 1969, and notices of such default were mailed to him. He failed to respond to the notices of default. On February 19, 1969, an officer of First Federal telephoned William Stuckenberg, the son of bankrupt, informing him of its intention to collect the rents pursuant to the deed of trust provision, and rquested information as to the names of tenants, monthly rentals payable by them, the due date, and date to which the rents had been paid. On February 21, 1969, William *17 Stuckenberg mailed to First Federal the requested information.
On the same date, First Federal sent to the bankrupt and to his attorney copies of letters addressed to "All occupants" of the building. This letter set forth the right of First Federal under Paragraph 7 of the deed of trust to take possession of the property upon default of monthly installment payment and to manage, control and lease the same and collect all rents due from the tenants, and further stating, "As of this date (February 21, 1969), the Association is exercising the power to take possession of this property occupied by you." The letter further advised the tenants that Harold C. Simon & Co., Inc. had been appointed as First Federal's rental and management agent, that all rental payments be made to Simon and that Simon's office should be contacted for any maintenance problems or any matters pertaining to their occupancy.
A representative of Simon, H. Kurt Simon, picked up copies of the letter for personal service on the tenants. He went to the building and delivered copies to three of the five tenants, Schaefer, Stockton and Collins. Each of these tenants, on February 24, 1969, acknowledged in writing receipt of such copies. Several unsuccessful trips were made by Simon in an attempt to find the other two tenants, Daves and Bauman, at home, following which he wrote each of them a letter on February 27, 1969, to the effect that the Simon Company was taking over the management of the building, enclosing another copy of the February 21 letter for their signature and return to him. Tenant Daves complied with this request by signing the letter on March 1, 1969, one day after bankruptcy. The remaining tenant, Bauman, did not acknowledge receipt of the letter at all, evidently because of his intention to move from the premises soon after bankruptcy. The apartment he occupied was then re-rented by Simon.
The issue ruled by the Referee was whether and to what extent First Federal was a "mortgagee in possession" at bankruptcy and entitled to the rentals thereafter collected. He held that as to tenants Schaefer, Stockton and Collins, First Federal was in possession of their apartments by reason of an attornment by each of them prior to bankruptcy, but that First Federal was not entitled to the rentals for the apartments occupied by Daves and Bauman.
In this review proceeding, the trustee in bankruptcy has filed a memorandum in which he concedes that the referee's ruling as to Stockton and Collins was correct, but contends that the decision as to tenant Schaefer was based on incompetent hearsay evidence. We do not agree. Not only was the questioned testimony as to the statements made by Schaefer at the time he was served with the letter elicited on cross-examination of Kurt Simon by specific questions posed by the trustee's attorney, but in our judgment the evidence was competent as showing Schaefer's intent to attorn and did not constitute hearsay. Accordingly, the trustee's cross-petition for review should be denied.
This brings us to the petition of First Federal. The parties are in accord that Missouri law governs. Tower Grove Bank & Trust Co. v. Weinstein, 8 Cir., 119 F.2d 120, 122; First Savings Bank & Trust Co. v. Stuppi, 8 Cir., 2 F.2d 822, 825.
The applicable Missouri rule is stated in Grafeman Dairy Company v. Mercantile Club, Mo., 241 S.W. 923, 927, to the effect that after default the mortgagee has the right to possession of the mortgaged property for the purpose of collecting the rents and profits and applying them to the discharge of the mortgage debt, but that he is not entitled to the rents "until the mortgagee enters into the actual possession [of the property] or takes some equivalent action."
The theory on which the Referee ruled the turnover petition as to tenants Schaefer, Stockton and Collins is that these tenants had attorned to First Federal, thereby becoming its tenants prior to bankruptcy and that such attornment *18 constituted action "equivalent" to entry into actual possession of the premises occupied by such tenants. As for the other two tenants, Daves and Bauman, the Referee held that they had not timely attorned, Daves' written acknowledgement of receipt of the February 21 letter being dated one day after the bankruptcy and Bauman not responding at all.
In our view, attornment vel non is not necessarily dispositive of the issues before us. We start with the fact that the deed of trust covers a single parcel of real estate with but one building on it, so that basically the question is whether First Federal entered into possession of that building. None of the cases cited by either of the parties addresses itself to that question. We find no support whatever in the evidence for a finding that bankrupt was resisting the taking of possession of the building by First Federal unit by unit until he or the tenant surrendered each unit on demand of First Federal. On the contrary, even though there was no specific affirmative consent by bankrupt to the action of First Federal, the circumstances clearly evidence an implied consent on his part. Not only had notices of default theretofore been sent to bankrupt but he was given a copy of the February 21 letter which expressly informed him not merely that First Federal intended to take possession but that it was then taking possession of the property as of that date. There is not the slightest suggestion in the record that bankrupt interposed any objections to this action at any time.
It also appears that bankrupt was seriously ill in the hospital, his physical condition being such as to create an emergency situation, and that his son (although on his own initiative and without express permission of bankrupt but after consultation with his attorney) took as much responsibility in relation to his father's business as he could handle "and to do what I thought was the right thing to do at the time." The son had been associated with his father in the real estate business for fifteen years and in particular with property management. In that capacity he had personally collected rents on the property in question, and (using the expression "we") had theretofore given tenant Stockton authority to watch over the premises and to make any minor repairs he deemed necessary. We do not, however, base our ruling on the facts stated in this paragraph, although they constitute circumstances to be taken into account.
In our judgment, the facts and circumstances in evidence compel the conclusion that First Federal entered into actual possession of the premises or at least took action equivalent thereto.
The trustee cites and relies upon a decision of a New Jersey nisi prius court of chancery, Hands v. Russell, 115 N.J. Eq. 55, 169 A. 361. That case is wholly inapplicable on its facts. There, the Court denied a petition by the mortgagee which sought to compel the tenant (who was not even a party to the foreclosure case in chief, and after final judgment therein), to pay rental for the period the tenant had occupied the mortgaged premises after demand was made upon him and prior to sale of the property at foreclosure. Not only was there no provision in the Hands mortgage granting the mortgagee the right to enter and take possession, as there is in the present case, but the petition seeking the rental payments affirmatively alleged that the mortgagor had been in possession of the premises at all times, so that admittedly the mortgagee never had possession, either actual or constructive, during the period the rent payments were made. In this state of facts, the court of chancery in Hands held that since the tenant should not be compelled at his peril to determine the sufficiency of the demand or whether it was in fact well founded, he was justified in failing to recognize the demand. By way of dictum, the Court further stated that the mere demand made upon the tenant, even if the demand had also been served upon the mortgagor, was insufficient to constitute *19 taking possession. Whether this dictum is law in Missouri is far from certain.[1]
However, in the instant case, there was far more than a mere demand for possession. Not only had First Federal given written notice to all tenants that "(a)s of this date [February 21, 1969] the Association is exercising its power to take possession of the property," but following this notice the rental agent appointed by First Federal actually entered upon the premises to the extent possible and he personally served three of the notices and mailed the other two notices, all prior to bankruptcy. In addition, First Federal, through its agent, reimbursed tenant Stockton, also prior to bankruptcy, for repairs he had made to a lock on the basement which was used in common by all tenants. And from time to time after bankruptcy First Federal made repairs to various units and rented on its own account those apartments which had become vacant (including the Bauman apartment), facts which we believe lend support to the conclusion that First Federal was theretofore in possession of the property based on the deed of trust provision and entitled to collect the rents.
What the trustee seeks to recover by the turnover petition are the rents collected by the mortgagee pursuant to the express power granted by the deed of trust, so that it is immaterial whether or not First Federal could have sued the tenants for rents owing by them had they refused the demand. In point of fact, no tenant refused to acknowledge First Federal's superior rights. True, Daves did not sign the letter until March 1, but we have no doubt that it had been earlier received by Daves, and there is not a scintilla of evidence that tenant Daves had theretofore intended to resist First Federal. That the acknowledgement was made after bankruptcy does not preclude our finding that First Federal had theretofore taken possession. As to tenant Bauman, it is evident that he ignored the letters sent to him simply because he was preparing to move and did so, so that the mere fact there was no attornment by him did not affect the possession of his unit taken by First Federal.
More to the point than Hands is the decision of another New Jersey Court of nisi prius, Spiotta v. National Grocery Co., 11 N.J.Misc. 739, 168 A. 159, in which the Court after pointing out that occupancy is not to be equated with possession, held that "* * * where, as here, the owner is not in actual but constructive possession of the mortgaged premises, nothing more than the service of a notice, or demand made by the mortgagee upon the tenant, setting forth that he is exercising his rights of possession could be required. Certainly, the mortgagee is not required to remove the tenants and thus actually and physically place himself in possession."
Under the totality of the facts in evidence, we believe it would be anamolous to hold that First Federal took possession of only three units and the basement of the building, leaving the other two apartments in bankrupt's possession. It follows that the order of the Referee to the extent it denies the petition for a turnover as to the rents collected from the units occupied by tenants Schaefer, Bauman and Collins should be and it is hereby affirmed and confirmed but that the said order to the extent it requires *20 First Federal to turn over the net rentals collected from the units occupied by tenants Daves and Bauman at the date of bankruptcy should be and the same is hereby set aside and the matter is hereby remanded to the Referee with directions to deny in its entirety the petition for a turnover order.
NOTES
[1] The following language from the Grafeman case is significant:

"It follows, under the principles just adverted to, that the mortgagee was not entitled to rents accruing from the mortgaged premises, unless and until it entered into possession of the premises, or took some action tantamount thereto. The interplea nowhere alleges that the trustee at any time entered into possession of the mortgaged premises or that it ever demanded possession thereof."
Also of significance is Tower Grove Bank & Trust Co. v. Weinstein, (119 F.2d 120, 123) in which the mortgagee was held not entitled to rents which had been collected by the trustee in bankruptcy after adjudication and before foreclosure, for the reasons, inter alia, that the mortgagee at no time had possession of the mortgaged premises and had taken no steps to impose a lien upon the rentals by demand upon the trustee until after the rents were collected and the premises sold.