142 N.J. Super. 232 (1976)
361 A.2d 81
XEROX CORPORATION, PLAINTIFF-APPELLANT,
v.
LISTMARK COMPUTER SYSTEMS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 11, 1976.
Decided June 8, 1976.
*234 Before Judges MATTHEWS, LORA and MORGAN.
*235 Messrs. Stryker, Tams and Dill, attorneys for appellant (Mr. Richard V. Jones, of counsel and on the brief).
Messrs. Schneider, Schneider and Behr, attorneys for respondent Mr. Michael P. Feltman, on the brief).
The opinion of the court was delivered by LORA, J.A.D.
Plaintiff Xerox Corporation sued defendant Listmark Computer Systems for damages in the amount of $11,696.40 representing two months rent under a sublease between Xerox and Compusize, Inc. at $3,523 a month, plus real estate taxes and water and electric bills for the two-month period, all with respect to the entire premises.
Cross-motions for summary judgment were filed and the trial judge in an oral opinion entered judgment against Listmark and in favor of Xerox in the amount of $400.02. Xerox appeals from that judgment contending that the trial judge erred in denying summary judgment to Xerox in the amount sought in its complaint.
The record reveals that, initially, the owner of the premises known as 245 Livingston Ave., Northvale, New Jersey, Troast-Sletteland Enterprises, leased said premises to Ferrodynamics Corporation (now known as Metex Corporation). Metex subleased the premises to Xerox on May 20, 1964. This sublease was to expire on April 30, 1974, and by its terms Xerox was prohibited from subletting the premises without the written consent of Troast and Metex.
Xerox, in turn, subleased the premises to Compusize on May 13, 1969 for a term of five years terminating on April 30, 1974. By the terms of this lease Compusize was prohibited from subletting or underletting the premises, in whole or in part, without the written consent of Troast, Metex and Xerox. In violation of this lease provision, on October 11, 1972 Compusize underlet approximately 1200 square feet of the 35,000 square foot building located on the subject premises to defendant Listmark.
*236 On June 22, 1973 Compusize filed a petition for an arrangement under Chapter XI of the Bankruptcy Act (11 U.S.C.A. § 701 et seq.). Under the terms of the Xerox-Compusize lease, the act of filing said petition terminated the lease. By order of the referee in bankruptcy the receiver for Compusize was permitted to remain on the premises until July 31, 1973 and pay Xerox the full rental value of the premises for the period June 22 through July 31, 1973. On September 7, 1973 the referee in bankruptcy amended his previous order to include a denial of Xerox's application to remove Listmark from the subject premises and directed Xerox to have recourse to the courts of New Jersey for this purpose.
Listmark paid rent to Compusize's receiver for the period ending July 31, 1973. Sometime in July and early August 1973 Listmark and Xerox had a series of communications with respect to Listmark's situation as an undertenant of Compusize. Listmark informed Xerox that it did not have another office to relocate to and sought permission to remain at 245 Livingston Street. Xerox asked Listmark to do whatever it could to remove its personnel and equipment from the premises as soon as possible.
On August 14, 1973 Listmark informed Xerox that Listmark expected to vacate the premises within the next two weeks. In a further letter from Xerox to Listmark, Xerox informed Listmark that it must vacate the premises by August 25, 1973 or be subject to appropriate legal proceedings.
On August 17, 1973 Xerox filed a complaint for possession, with an order to show cause requesting that Xerox be given immediate possession of the premises by Listmark. It also appears that Xerox sought damages from Listmark in addition to possession of the premises. By consent order of October 1, 1973 Listmark was ordered to vacate the premises on or before September 30, 1973. It appears the judge did not consider Xerox's request that the court retain jurisdiction of the matter for presentation of proofs respecting damages.
*237 During August and September 1973 Xerox was required to pay rent to its landlord, Metex, in the amount of $2,935.50 a month and all real estate taxes and other utility charges amounting to $4,650.40. By the terms of the Xerox-Compusize sublease Compusize was charged with $3,523 rent a month plus the additional costs noted above. The total amount which would have been due from Compusize for this period but for the bankruptcy is $11,696.40.
Xerox maintains that Listmark's status vis-a-vis Xerox was that of a trespasser and that the effect of Listmark's trespass was to deprive Xerox of the use and enjoyment of the entire premises, because Listmark's presence therein prevented Xerox from making use of the premises or reletting the same. Xerox's lease, as noted above, was to expire on April 30, 1974.
The record indicates that the building, in which Listmark was occupying 1200 of an available 35,000 feet, would not have been in a condition to sublet, at least until the end of September 1973, due to necessary repair and maintenance work. In addition, representations of counsel before the trial court indicate that Xerox and Metex had shown the premises to prospective tenants while Listmark was still in possession.
The trial judge in his oral decision held that Listmark owed Xerox $400.02, or 3.42% of the total rent of $11,696.40, owing but for bankruptcy from Compusize. The percentage figure is derived from the ratio which the 1200 square feet occupied by Listmark bears to the 35,000 square feet covered by the Compusize sublease.
It would appear that the trial judge bottomed his award of $400.02 to Xerox on N.J.S.A. 2A:42-4, which provides:
When premises shall be underlet by any tenant, the undertenant shall be liable to the lessor or landlord for the rent which shall accrue from and after notice in writing served for that purpose upon the undertenant, or which shall be unpaid by the undertenant at the time of such notice, and the lessor or landlord shall have all the remedy for the recovery of the same by distress; but the *238 rent to be paid by such undertenant shall in no case exceed the amount agreed to be paid by the first tenant. If only a part of the premises shall be underlet, payment shall be required only for the part underlet, at a rate proportioned to the rent agreed to be paid by the first tenant or lessee.
Xerox contends that this statute is inapplicable to the instant matter because Listmark was a trespasser and not an undertenant during the time period at issue.
There can be no question that Listmark was a tenant of Compusize, that Compusize was a tenant of Xerox, and that the lease executed between Compusize and Xerox prohibited the subletting or underletting to Listmark without the written consent of Xerox, Metex and Troast, which was never obtained.
As a general rule the restriction against lease transfers contained in an express provision in the lease is viewed as a condition subsequent. The lessee may therefore transfer despite the restriction, and the transfer is effective until avoided by the lessor. 1 American Law of Property, § 3.58 (1952); People v. Klopstock, 24 Cal.2d 897, 151 P.2d 641 (Sup. Ct. 1944); Citizens Fidelity Bank & Trust Co. v. Norfleet, 252 S.W.2d 54 (Ky. Ct. App. 1952). It follows then that the sublease between Compusize and Listmark was valid but subject to the right of Xerox to declare a forfeiture and dispossess its tenant and the tenant's undertenant. See Stark v. Nat'l Research and Design Corp., 33 N.J. Super. 315, 323 (App. Div. 1954) (stating analogous rule respecting the assignment of a lease containing a covenant against assignment).
In light of these principles, it is clear that Listmark was not a trespasser and was rightfully in possession of 1200 square feet of the subject premises pursuant to its lease with Compusize. When Compusize filed its petition for an arrangement in bankruptcy on June 22, 1973, its lease with Xerox terminated due to the clause in the lease which so specifically provided.
*239 Generally, the tenants of a lessee have no greater rights to possession than their immediate lessor possessed, in the absence of an attornment. D'Agostino v. Sheppard, 102 N.J.L. 154, 155-156 (E. & A. 1925). Anything which defeats the tenants' estate will defeat the subtenants' estate. Wehrle v. Landsman, 23 N.J. Super. 40, 46 (Law Div. 1952). Where there is a breach of condition contained in the lease, the landlord may terminate the lease with the result that the lessee's tenant's interest is likewise extinguished. 1 American Law of Property, § 3.62 (1952). Since Compusize's bankruptcy represents a breach of its lease with Xerox, Listmark's interest in the premises is also extinguished, as distinguished from those cases in which it has been held that the voluntary surrender of a lease by a lessee does not operate to extinguish a subtenants' term. See Shaw v. Creedon, 133 N.J. Eq. 397, 400-401 (Ch. 1943); Louis Schlesinger Co. v. Rice, 4 N.J. 169, 174 (1950).
In view of our conclusion that Listmark's interest in the premises as an undertenant of Compusize terminated as of June 22, 1973, N.J.S.A. 2A:42-4 is not applicable to the situation before us. N.J.S.A. 2A:42-4 was enacted to permit a landlord to recover rent directly from the subtenant, a right he did not have at common law, and by virtue of which a landlord may now hold the subtenant liable for rent after serving the requisite notice. Under the common law a landlord could not sue a subtenant for rent since there is no privity of contract between a landlord and subtenant. Shaw v. Creedon, supra.
The record further indicates Xerox first became aware of Listmark's presence on the subject premises in late July 1973. Xerox had been paid the full rental value of the premises by Compusize's receiver, and Listmark had remitted the rent which would have been due Compusize for the month of July to the receiver. Since Listmark's subtenancy from Compusize had terminated as of June 22, 1973 and Listmark remained in possession, Listmark became *240 a holdover tenant. A holdover tenant may be treated at the election of the landlord as a trespasser or a tenant. Sheild v. Welch, 4 N.J. 563, 568 (1950). If the landlord, here Xerox, elected to treat the holdover as a tenant and collected rent, the tenancy created was that of a tenancy from month to month. N.J.S.A. 46:8-10.
The correspondence between Xerox and Listmark in August 1973 indicates that Xerox asked Listmark to vacate the premises as soon as possible. Xerox did not collect rent from Listmark during the months of August and September, and consequently no tenancy from month to month was created by operation of law. N.J.S.A. 46:8-10.
We are of the view that Listmark's status as of June 22, 1973 was that of a tenant at sufferance. See 1 American Law of Property, § 3.32 (1952); Moore v. Smith, 56 N.J.L. 446 (Sup. Ct. 1894). A tenant at sufferance has been defined as "one who comes into possession of land by lawful title, usually by virtue of a lease for a definite period, and after the expiration of the period of the lease holds over without any fresh leave from the owner." Standard Realty Co. v. Gates, 99 N.J. Eq. 271, 275 (Ch. 1926). In Pearce v. Auringer, 25 N.J. Misc. 424, 54 A. 2d 822 (Sup. Ct. 1947), a case analogous to the present matter, the remaindermen of a life tenant sought possession of the premises leased by the life tenant to a subtenant. The court held that the subtenant's estate was terminated at the death of the life tenant and that by remaining in possession after the life tenant's death, the subtenant may have become a tenant at sufferance by the inaction of the remaindermen, and as such would be liable to them for the reasonable value of the use and occupation of the premises. See also United States v. Whipple Hardware Co., 191 F. 945 (3 Cir.1911).
In the instant matter Listmark originally entered the subject premises pursuant to a valid lease from Compusize, even though said lease was subject to forfeiture for breach of condition. When the main lease from Xerox to Compusize was terminated by Compusize's bankruptcy, the sublease from *241 Compusize to Listmark also terminated and Listmark became a tenant at sufferance.
There is then no merit to Xerox's contention that Listmark is a trespasser and as such liable for mesne profits or the full rental value of the premises. The purpose of the tenant at sufferance classification was to distinguish the tenant holding over from a trespasser. While the tenant at sufferance is in possession wrongfully, he is not a trespasser because he entered lawfully. I American Law of Property, § 3.32 (1952); United States v. Whipple Hardware Co., supra.
The trial judge awarded Xerox a sum by way of damages which represented the rental value of that portion of the premises used and occupied by Listmark. Although we do not agree with the rationale of the judge in arriving at this result, the result reached is a proper one under the circumstances of this case and the law outlined above. Furthermore, there is no evidence in the record to suggest that Xerox, whose lease terminated in April 1974, suffered damage due to the inability to relet the premises because of Listmark's presence. In fact, the depositions taken in the prior Chancery action instituted by Xerox for possession indicate that the building was in need of extensive maintenance and repair before a new lease could be executed.
Affirmed.